UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL C. RAMSEY,<br><br>                                    Plaintiff,<br><br>v.<br><br>N. THOMPSON,<br><br>                                    Defendants. | Case No.:  23-cv-1920-JAH-DDL<br><br>**REPORT AND RECOMMENDATION FOR ORDER (1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND (2) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**[Dkt. Nos. 67, 76]** |

Plaintiff Daniel C. Ramsey, proceeding *pro se* in this civil rights action, alleges his Eighth Amendment rights were violated when he was transferred to High Desert State Prison.  Dkt. No. 47.  Before the Court is Plaintiff's Motion for Summary Judgment [*see* Dkt. No. 67 ("P. MSJ")] and Defendant's Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment [*see* Dkt. No. 76-2 ("D. MSJ")].  This Report and Recommendation is submitted to United States District Judge John A. Houston pursuant to 28 U.S.C. § 636(b) and Civil Local Rules 72.1(c) and 72.3(f) of the United States District Court for the Southern District of California.   For   the   following   reasons,   the   Court

1

**RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **DENIED** and that Defendant's Motion for Summary Judgement be **GRANTED**.

## I.

## PROCEDURAL BACKGROUND

On October 16, 2023, Plaintiff Daniel C. Ramsey, a state prisoner proceeding pro se and *in forma pauperis*, filed a complaint under the Civil Rights Act, 42 U.S.C. § 1983 against N. Thompson and H. Moseley.[1]  Dkt. No. 1.

On December 16, 2024, Plaintiff filed a motion for a preliminary injunction. Dkt. No. 18.

On December 27, 2024, N. Thompson answered the complaint.  Dkt. No. 22.

On February 12, 2025, Judge Houston held a hearing on Plaintiff's motion for a preliminary injunction, denied the motion, and granted Plaintiff leave to amend his complaint.  Dkt. No. 33.

On February 24, 2025, Plaintiff filed the First Amended Complaint ("FAC") alleging that John Doe #1, Warden (RJD)[2] violated his right to Due Process and failed to protect him, and that Defendant N. Thompson was deliberately indifferent to his medical needs and failed to protect him from harm, in violation of his Eighth Amendment rights.   Dkt. No. 36 at 2-7.

On February 28, 2025, Defendant N. Thompson moved for partial dismissal of the FAC. Dkt. No. 37.

---

[1]    Defendant H. Moseley was terminated from the case on January 22, 2024. *See* Docket; *see also* Dkt. No. 5.

[2]    Warden Doe has not been identified and thus has never been served nor appeared in the action.

23-cv-1920-JAH-DDL

On March 25, 2025, the Court issued an Order Granting Plaintiff's Motion for Leave to File a Second Amended Complaint and Report and Recommendation for Order Denying Defendant's Motion to Dismiss as Moot.  Dkt. No. 41.

On April 28, 2025, Plaintiff filed a Second Amended Complaint ("SAC") under § 1983, against Defendant N. Thompson.  Dkt. No. 47 at 1.  Plaintiff alleges claims under the Eighth and Fourteenth Amendments for deliberate indifference, failure to protect, and procedural due process violations.  *Id.* at 2.

On May 5, 2025, Defendant N. Thompson filed a Motion for Partial Dismissal of Plaintiff's SAC for failure to state a Fourteenth Amendment procedural due process claim.  Dkt. No. 48-1.  On May 21, 2025, Plaintiff filed an opposition to the motion and Defendant replied on June 19, 2025.  Dkt. Nos. 50-1, 56.

On July 22, 2025, Plaintiff filed a Motion for Summary Judgment.  Dkt. No. 67.

On October 24, 2025, Defendant filed a Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment.  Dkt. No. 76.

On October 30, 2025, the Court issued a Report and Recommendation for order (1) Granting Defendant's Motion for Partial Dismissal and (2) Order Denying in Part and Granting in Part Plaintiff's Motion for the Court to Take Judicial Notice of Adjudicative Facts.  Dkt. No. 80.

On November 21, 2025, Plaintiff filed a declaration in support of his MSJ and an opposition to Defendant's MSJ.  Dkt. No. 87.  That same day, Plaintiff filed another opposition to Defendant's MSJ.  Dkt. No. 88.

On December 15, 2025, Defendant filed a reply in support of her MSJ.  Dkt. No. 89.

On December 31, 2025, Plaintiff filed a reply in support of his MSJ.  Dkt. No. 93.

23-cv-1920-JAH-DDL

On March 27, 2026, Judge Houston adopted the Report and Recommendation and dismissed Plaintiff's Fourteenth Amendment claim without leave to amend.  Dkt. No. 94.

## II.

## COMPLAINT ALLEGATIONS[3]

This action arises out of Plaintiff's transfer to High Desert State Prison ("HDSP").  SAC at 4.  Plaintiff alleges he is a wheelchair-bound, disabled inmate who suffers from paraplegia and other unspecified medical conditions, and as a result has a "high risk" medical designation.  *Id.* at 5, 8-9.  In early 2023, Plaintiff, who was housed at Richard J. Donovan ("RJD"), was informed by his counselor that he was up for an annual review for good behavior and that, due to his medical status, the options for housing were the California Health Care Facility and the California Medical Facility.  *Id.* at 4-5.  Plaintiff preferred the California Health Care Facility, and that information was forwarded to the Inmate Classification Committee ("ICC").  *Id.* at 5.

On March 3, 2023, Plaintiff alleges that Defendant filed an Auditor Action removing Plaintiff's medical conditions, overriding Plaintiff's high risk medical designation without any stated reason, and recommending Plaintiff's transfer to HDSP, a non-high risk medical facility.  *Id.* at 6-7.  Plaintiff alleges this was done without approval by the California Correctional Health Care Service ("CCHCS") or his primary care provider.  *Id.* at 6.  After learning of the proposed transfer to HDSP, Plaintiff filed a 602 grievance requesting the transfer be placed on hold as he did not belong in a facility unable to house individuals with high-risk medical needs and an inability to defend themselves.  *Id.* at 7-8.  In his grievance, Plaintiff also noted that he was scheduled for another surgery and a follow-up appointment with

---

[3]    This section is taken from the Court's October 30, 2025 Report and Recommendation that was adopted by Judge Houston.  *See* Dkt. No. 80 at 3-4.

his neurosurgeon. *Id.* at 8.    Plaintiff's grievance was denied and he was transferred to HDSP in March 2023. *Id.* at 7-8.

Plaintiff alleges that Defendant's decision to override his high risk designation and authorize the transfer to HDSP violated his Eighth Amendment rights as it was deliberately indifferent to his medical needs, failed to protect him, and recklessly ignored the excessive risk the transfer posed to Plaintiff's health. *Id.* at 13.   Plaintiff further alleges that his Fourteenth Amendment due process rights were violated because he was not asked about the decision to remove his high-risk medical designation and Defendant failed to receive approval from CCHCS, ICC, or Plaintiff before making her decisions related to the Audit.   *Id.* at 14.   In addition, Plaintiff was not informed of his transfer until the day it took place and had no opportunity to research, investigate, or be heard on the issue.   *Id.*

### III.
### SUMMARY JUDGMENT ARGUMENTS
**A.    Plaintiff's Motion**

Plaintiff argues that summary judgment should be entered in his favor because Defendant violated his constitutional rights by endorsing his transfer to a non-high risk medical facility.   P. MSJ at 3-4.   Specifically, Plaintiff argues that his Eighth and Fourteenth Amendment rights were violated and that Defendant was deliberately indifferent to his medical needs, interfered with his medical diagnosis, and failed to protect him.   *Id.*

Defendant contends that Plaintiff did not suffer an Article III injury and that the Court lacks jurisdiction to grant his request for injunctive relief. D. MSJ at 20-23.   Defendant further contends that she did not violate Plaintiff's rights because she followed policy and information from others and was not deliberately indifferent.   D. MSJ at 23-29.   Finally, Plaintiff does not have a protected liberty interest and Defendant is entitled to qualified immunity.   *Id.* at 29-33.

23-cv-1920-JAH-DDL

Plaintiff replies that summary judgment should be entered in his favor as Defendant "failed to generate a genuine dispute of material fact."  Dkt. No. 93 at 2.

**B.    Defendant's Motion**

Defendant argues that summary judgment should be entered in her favor because she did not violate Plaintiff's constitutional rights, Plaintiff's claims fail as a matter of law, and she is entitled to qualified immunity from suit.  Dkt. No. 76 at 1.   Defendant further argues that Plaintiff cannot satisfy the objective and subjective elements of an Eighth Amendment claim and that Plaintiff does not have a protected interest under the Constitution or state law.[4] D. MSJ at 10.

Plaintiff contends that he established that his Eighth and Fourteenth Amendment rights were violated. Dkt. No. 88.  Plaintiff states that Defendant had access to all of his records, reviewed them, disregarded them and recommended him for transfer to a non-high risk facility in violation of his rights.  *Id.* at 2.  Plaintiff was not given the opportunity to present his position prior to transfer.  *Id.* at 6-7.

Defendant replies that Plaintiff's attempts to overcome the genuine and undisputed material facts are based on "speculation and unsupported, irrelevant theories."  Dkt. No. 89 at 1.  Defendant further replies that Plaintiff failed to satisfy his burden to point to specific evidence to create a genuine dispute of material fact. *Id.* at 2.  Defendant notes that Plaintiff's objections to her statement of undisputed material facts should be overruled and that Plaintiff's opposition evidence should not be considered because it is "unsworn and not authenticated."  *Id.* at 4. Defendant also contends that Plaintiff failed to (1) address her arguments regarding Plaintiff's lack of Article III injury and the Court's lack of personal

---

[4]    Defendant's motion to dismiss Plaintiff's Fourteenth Amendment claim was pending when Defendant moved for summary judgment, and Defendant included that claim in the summary judgment motion "[i]n an abundance of caution."  D. MSJ at 10 n. 2.  As noted above, Judge Houston subsequently dismissed the Fourteenth Amendment claim without leave to amend.

jurisdiction to award injunctive relief, (2) create a genuine issue of material fact as to his deliberate indifference claim, and (3) demonstrate an underlying protected liberty interest. *Id.* at 5-8. Finally, Defendant contends that she is entitled to qualified immunity. *Id.* at 8-9.

**IV.**

**LEGAL STANDARDS**

**A.    Pro Se Litigants**

When a plaintiff appears *pro se*, the court must be careful to construe the pleadings liberally and to afford the plaintiff any benefit of the doubt. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002). This rule of liberal construction is "particularly important" in civil rights cases. *Hendon v. Ramsey*, 528 F. Supp. 2d 1058, 1063 (S.D. Cal. 2007); *see also Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) ("our obligation remains, where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt").

**B.    Summary Judgment**

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "moving party initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).[5] "Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial." *Id*. This task "is not a light one." *Id*. The non-moving party cannot rely on his pleadings, but "must come forth with evidence from which a jury could reasonably render a verdict [for] [him],

---

[5]    All citations, internal quotation marks, and subsequent history are omitted unless otherwise noted.

assuming that all justifiable inferences are drawn in [his] favor." *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 898 (9th Cir. 2021).

**C.     42 U.S.C. § 1983**

Section 1983 imposes two essential proof requirements upon a claimant: (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States. *See* 42 U.S.C. § 1983; *Marsh v. Cty. of San Diego*, 680 F.3d 1148, 1152 (9th Cir. 2012).  A person acting under the color of law deprives another "of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." *Preschooler II v. Clark County Sch. Bd. of Trustees*, 479 F.3d 1175, 1183 (9th Cir. 2007)).  "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).

**V.**

**DISCUSSION**

Plaintiff alleges that Defendant violated his Eighth Amendment rights when she filed an Auditor Action overriding Plaintiff's high risk medical designation which resulted in his transfer to HDSP, a non-high risk medical facility.  SAC at 6-7. Plaintiff seeks injunctive relief preventing him from being housed in a non-high Risk facility, $880,00 in damages, $2,000,000 in punitive damages, and fees.  *Id.* at 17.

**A.     Evidence the Court May Consider on Summary Judgment**

In evaluating a motion for summary judgment, a court may only consider admissible evidence. *See Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002). A party may not create a triable issue of fact merely by presenting argument in its legal memoranda. *See S.A. Empresa De Viacao Aerea Rio Grandense (Varig*

23-cv-1920-JAH-DDL

*Airlines) v. Walter Kidde & Co.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Defendant contends the Court should not consider Plaintiff's unsworn statements in determining whether a triable issue of fact exists. Dkt. No. 89 at n4. *See Estrella v. Brandt*, 682 F.2d 814, 819–20 (9th Cir. 1982) (on summary judgment, statements in legal memoranda are not evidence and "do not create issues of fact capable of defeating an otherwise valid summary judgment motion").

In ruling on the parties' motions, the Court will consider facts contained in Plaintiff's motions and pleadings that are attested under penalty of perjury. *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) ("because Jones is pro se, we must consider as evidence in his opposition to summary judgment all of Jones's contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where Jones attested under penalty of perjury that the contents of the motions or pleadings are true and correct"). Moreover, the Court will consider Plaintiff's unsworn statements to the extent Plaintiff could testify under oath at trial regarding his personal knowledge of those statements. *See Fraser v. Goodale*, 342 F.3d at 1036-1037 (9th Cir. 2003) (At the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents."); *see also Rosenfeld v. Mastin*, No. CV 11-7002-DOC(E), 2013 WL 5705638, at *5 (C.D. Cal. Sep. 11, 2013) (considering plaintiff's unsworn statements made in the third amended complaint and in the summary judgment opposition because plaintiff "plainly has personal knowledge of the content of these statements and could present the statements in admissible form through his own testimony at trial," but not considering plaintiff's speculative statements regarding a particular claim where there was no indication plaintiff had personal knowledge of the claim); *Boyd v. McDowell*, No. CV 21-5616-JAK(E), 2024 WL 4719709, at *4 ("the Court should consider the unsworn factual statements made by Plaintiff in the Fourth Amended Complaint, to the extent that document shows Plaintiff has

23-cv-1920-JAH-DDL

personal knowledge of the content of the statements and could present the statements in admissible form through his own testimony at trial"). [6]

**B.    Defendant's Evidence**

In support of her MSJ and opposition to Plaintiff's MSJ, Defendant submits (1) a memorandum of points and authorities [Dkt. No. 76-2]; (2) a statement of undisputed material facts [Doc No. 76-3]; (3) her own sworn declaration [Dkt. No. 76-4 ("Thompson Decl.")]; (4) the sworn declaration of C. Hees, Correctional Captain in the Classification Services Unit ("CSU") of the Division of Adult Institutions [Dkt. No. 76-5 ("Hees Decl.")], (5) the sworn declaration of B. Baldoni, Correctional Counselor II in the CSU Health Care Headquarters [Dkt. No. 76-6 ("Baldoni Decl.")], (6) the sworn declaration of T. Murray, Health Care Chief Executive Officer at HDSP [Dkt. No. 76-7 ("Murry Decl.")], (7) the sworn declaration of defense counsel, Anne M. Kammer [Dkt. No. 76-8 ("Kammer Decl.")], and (8) excerpts from Plaintiff's deposition transcript [76-8 at 4-21].

**C.    Plaintiff's Evidence**

In support of his MSJ, Plaintiff submits (1) a Medical Classification Chrono from September 21, 2021 [Dkt. No. 67-1 at 2], (2) an order for a low air mattress [Dkt. No. 67-1 at 4], (3) a Health Care Transfer Information Form CDCR 7371 [Dkt. No. 67-1 at 6-7], (4) a Health Care Services Request Form CDCR 7362 [Dkt. No. 67-1 at 9-10], (5) a July 4, 2023 Office of Appeals Decision [Dkt. No. 67-1 at 11], (6) his own declaration signed under penalty of perjury [P. Decl.], (7) a statement

---

[6] Plaintiff argues that all statements contained in his SAC must be accepted as true because Defendant failed to respond to the SAC as ordered by the Court and required under Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 8(b)(6).  P. MSJ at 12-13, ¶ 23. That is incorrect. Defendant responded to Plaintiff's complaint by filing a Motion to Dismiss Plaintiff's Second Amended Complaint.  Dkt. No. 48; *see also* Dkt. No. 64 ("Order Denying Plaintiff's Motion for Default Judgment Against N. Thompson"); and Dkt. No. 80 at 6 fn.3.

23-cv-1920-JAH-DDL

of undisputed material facts [Dkt. No. 87-1], (8) a Classification Chrono CDCR 128G [Dkt. No. 87-2], (9) an October 24, 2023 Office of Appeals Decision [Dkt. No. 87-3], (10) his objections to Defendant's statement of undisputed material facts, (11) a second declaration signed under penalty of perjury [Dkt. No. 87 ("Ramsey Decl.")] and (12) an opposition to Defendant's MSJ [Dkt. No. 88].

**D.    Undisputed Facts**

Both Plaintiff and Defendant agree that it is undisputed that (1) Plaintiff is housed in HDSP, which is not a high-risk facility, (2) Plaintiff has a high risk medical clinical status and requires a high-risk medical designation, (3) Defendant endorsed Plaintiff's transfer to HDSP, (4) as a Classification Staff Representative ("CSR"), Defendant was not authorized to transfer Plaintiff to an institution that could not provide Plaintiff with the appropriate level of medical care, (5) Plaintiff was housed at RJD from 2014 to March 2023, (6) Counselor J. Fontaine evaluated the locations that were in compliance with policy and Plaintiff's medical clinical status and located two prisons that were available medical facilities, California Health Care facility ("CHCF") and California Medical Facility ("CMF"), Plaintiff chose CHCF as first choice and CMF as second, and the counselor agreed and forwarded the findings to the Unit Classification Committee ("UCC"), (7) Plaintiff signed documents for CHCF and CMF because he did not protest the findings or having the Counselor to represent him before the UCC and the Institution Classification Committee ("ICC") and the ICC and UCC both agreed with the selected medical facility institutions and approved transfer by recommendation, (8) on March 2, 2023, Defendant audited the RJD UCC's recommendation regarding Plaintiff's housing transfer and endorsed Plaintiff for transfer to HDSP, (9) Defendant typed "A.) Medical Conditions- Removed/Disapproved, B.) HR (High Risk) w/ override, and  C.) Reason's None" on the Auditor Action document, (10) Defendant overrode Plaintiff's high-risk medical designation and endorsed Plaintiff's transfer to HDSP, (11) the UCC and ICC document filed and given to the

Defendant showed Plaintiff's housing score, needs, by the abbreviation "MED," (12) CCHCS has a medical classification system for the incarcerated population in CDCR's custody,  (13) Plaintiff is endorsed for housing at HDSP, (14) Plaintiff has been labelled by medical custody staff as a Fall Risk, (15) Plaintiff needs assistance to use the bathroom  and relied on inmates to help whom he paid with food from the kitchen or package canteen when he went to store, (16) Plaintiff submitted an administrative grievance regarding his transfer to HDSP which was denied without Plaintiff being interviewed, and (17) Plaintiff did not have a hearing, interview, or notice that he was being transferred, or that his medical conditions would be overridden and removed before Defendant's actions on March 3, 2023. *See* P. MSJ at 5-9; Dkt. No. 76-3 at 18-22 (Defendant's Responses to Plaintiff's Facts in Support of Plaintiff's Moton for Summary Judgment).

**E.      Plaintiff's Objections**

Plaintiff "objects to all undisputed facts pages 2-17 numbers 1-18 and objects to Plaintiff summary judgment statements page 18-22 numbers 3-22" as being inconsistent with the facts as stated in his SAC.[7]  Dkt. No. 88 at 9-10.

Plaintiff's objections to "all undisputed facts pages 2-17 numbers 1-18" are **OVERRULED**.  Facts 1-2 are undisputed and in accordance with Plaintiff's own undisputed facts.  *See* Dkt. No. 76-3 at 2 (Fact No. 1 "Plaintiff Ramsey is an incarcerated person in the custody of the California Department of Corrections and Rehabilitation (CDCR)" and Fact No. 2 "During his entire period of incarceration, Ramsey has relied on a wheelchair.") and compare to Ramsey Decl. at ¶ 2 ("I've been incarcerated since 2006 as a disable[d] person in a wheelchair (DPW) do

---

[7] Plaintiff is referring to Defendant's Undisputed Material Facts in Support of Defendant's Motion for Summary Judgment and In Opposition to Plaintiff's Motion for Summary Judgment [*see* Dkt. No. 76-3 at 2-17] and Defendant's Responses to Plaintiff's Facts in Support of Plaintiff's Moton for Summary Judgment [*see Id.* at 18-22].

23-cv-1920-JAH-DDL

[sic] to paraplegic.") and SAC at 1, 4-5 (stating that Plaintiff resides at the address for HDSP and previously resided in RJ Donovan Correctional Facility and that his custody level includes "disable[d] person in wheelchair (DPW)").  The remaining facts (Nos. 3-18) discuss Defendant's years of service, job titles, duties, and responsibilities, and the policies and procedures for determining the placement of incarcerated individuals in various facilities.  Dkt. No. 76-3 at 2-17.  The facts come from the sworn declarations of Defendant Thompson, C. Hees, and B. Baldoni who have first-hand knowledge of the facts based on their work experience.  Plaintiff does not have personal knowledge of Defendant's years of service, job titles, duties, and responsibilities, and the policies and procedures for determining the placement of incarcerated individuals in various facilities.

Plaintiff's objections to all "summary judgment statements page 18-22 numbers 3-22" are **OVERRULED**.  Contrary to Plaintiff's argument, his own declaration and recitation of the facts in his SAC support the facts identified by Defendant as undisputed from Plaintiff's facts in support of his Motion for Summary Judgment.  Dkt. No. 76-3 at 18-22; *see also* Attachment A to this Report & Recommendation.

Plaintiff also objects to Defendant's undisputed facts regarding Policies and Procedures for Prison Transfers [*see* Dkt No. 76-3 at 3-7], Plaintiff's Initial Eligibility for a Transfer by RJD's UCC [*see id.* at 8-10], and Plaintiff's Transfer Review by the CSU and Thompson  [*see id.* at 10-17]. Dkt. No. 88 at 11-40.  Plaintiff objects for various reasons including (1) opinion, (2) hearsay of statement of policies and procedures or with no expert opinion, (3) argumentative, inconsistent with the facts, (4) false documents and/or lack of authentication of document, and (5) lack of foundation of opinion.  "While objections based on relevance, lack of foundation, and lack of personal knowledge may be cognizable at trial, on a motion for summary judgment, the Court is concerned only with the ***admissibility*** of relevant ***facts*** at trial, and not the ***form*** of these facts as presented in the [m]otion." *Perrotte*

*v. Boulton*, No. 5:22-CV-01593-SSS-SPX, 2025 WL 2371824, at *3 (C.D. Cal., July 21, 2025) (emphasis in original) (overruling "Plaintiff's evidentiary objections based on relevance, self-serving nature, lack of foundation, and lack of personal knowledge"); *see also Ramirez v. Victoria's Secret Stores, LLC*, 2019 WL 6998784, at *2 (C.D. Cal. July 18, 2019) (overruling defendant's evidentiary objections based on relevance, lack of foundation, lack of personal knowledge, and speculation).   In addition, Plaintiff's objections are generally stated without any explanation as to how the evidentiary rules are violated. *See Blue Novis, Inc. v. U.S. Alliance Group, Inc.*, No. 820CV01280JVSDFMX, 2021 WL 3163613, at *1 (C.D. Cal., May 25, 2021) ("[t]he Court does not give merit to Alliance's boilerplate objections that are devoid of relevant analysis or do not adequately dispute the facts in the [statement of undisputed facts].").

Because the evidence Plaintiff objects to "could be presented in an admissible form at trial (*i.e.*, through testimony from a witness laying the foundation for an exception or because the Court finds the evidence to be non-hearsay")" and because Plaintiff provides boilerplate general objections, Plaintiff's objections based on opinion statement, hearsay, argumentative statements, inconsistency with the facts, false documents and/or lack of authentication of document, and lack of foundation of opinion are **OVERRULED**.   *Cherewick v. State Farm Fire and Casualty*, 578 F.Supp.3d 1136, 1157 (S.D. Cal. 2022) (While hearsay evidence is not typically admissible at trial, if hearsay evidence "could be presented in an admissible form at trial (*i.e.*, through testimony from a witness laying the foundation for an exception or because the Court finds the evidence to be non-hearsay)," that evidence can be considered when evaluating a motion for summary judgment).

## F.    Eighth Amendment Claim

Plaintiff asserts multiple Eighth Amendment theories of liability, and the Court addresses each in turn.

///

23-cv-1920-JAH-DDL

## 1.    Conditions of Confinement

"The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones," and "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citations omitted). "To prove an Eighth Amendment violation based on prison conditions, a prisoner must satisfy a two-part test." *Grenning v. Miller-Stout*, 739 F.3d 1235, 1238 (9th Cir. 2014). "The objective part of the test requires a showing that the defendants deprived the plaintiff of the minimal civilized measure of life's necessities." *Id.* (citation omitted). "The subjective part requires a showing that the defendants acted with deliberate indifference in doing so." *Id. See Farmer*, 511 U.S. at 837 ("a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference").

Plaintiff's allegations that he was in a "flooded cell for months," that the prison had an "incomplete roof" from March 2023 until November 2023 and that the prison grounds were covered in snow and had uneven terrain do not raise a triable issue of fact as to his Eighth Amendment claim against Defendant based on conditions of confinement.   Even assuming any of these alleged conditions could be construed as depriving Plaintiff "of the minimal civilized measure of life's necessities," *Grenning*, 739 F.3d at 1238, his claim fails on the subjective part because there is no evidence Defendant was aware of the conditions and disregarded an excessive risk of harm to Plaintiff.  Plaintiff presents no evidence supporting a finding that Defendant was aware of any prison condition presenting a risk of harm to Plaintiff and disregarded that risk of harm by authorizing Plaintiff's transfer to HDSP. *See Farmer*, 511 U.S. at 837 ("the official must both be aware

of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference").

Plaintiff's allegation that the prison environment at HDSP is more dangerous than what would typically be acceptable because of his inability to defend himself with one arm is too speculative to establish deliberate indifference. *Dilbert v. Fisher*, 2023 WL 4848515, at *4 (E.D. Cal. July 28, 2023) ("To the extent that Plaintiff claims an Eighth Amendment violation due to the fact that his 'high risk medical' status may result in his potential transfer to another prison with younger and more dangerous inmates, such a risk of serious harm to Plaintiff is speculative and too attenuated to meet the deliberate indifference standard to sustain an Eighth Amendment violation."). Plaintiff does not provide or identify evidence of a specific harm, nor does he allege he suffered actual harm. Plaintiff also alleges that HDSP was dangerous because if he fell and injured his neck, it would take 1.5 – 2 hours to get him to a proper hospital. P. Decl. at 18. On this record, Plaintiff's perceived threat of future harm is purely speculative.

Plaintiff's speculative contentions regarding a risk of harm from other HDSP inmates and an inability timely transport him to a hospital if medical treatment were necessary fail to raise a triable issue of fact as to whether Defendant deprived him "of the minimal civilized measure of life's necessities." *Grenning*, 739 F.3d at 1238. Moreover, there is no evidence that Defendant was aware of any such conditions and acted with deliberate indifference in transferring Plaintiff to HDSP. *Id.*

For the foregoing reasons, the Court **RECOMMENDS** that the District Court **GRANT** Defendant's Motion for Summary Judgment and enter judgment in Defendant's favor and **DENY** Plaintiff's Motion for Summary Judgement as to Plaintiff's Eighth Amendment conditions of confinement claim.

### 2. Failure to Protect

Under the Eighth Amendment, "prison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer,* 511 U.S. at 833.

To prevail on a failure to protect claim, Plaintiff must show prison officials were "deliberately indifferent to a serious threat to his safety. *Id.* at 834. "Deliberate indifference has both subjective and objective components." *Labatad v. Corr. Corp. of Am.*, 714 F.3d 1155, 1160 (9th Cir. 2013). To establish the objective component, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. To establish the subjective component, the inmate must show that a prison official "kn[ew] that inmates face[d] a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it." *Labatad*, 714 F.3d at 1160.

Plaintiff alleges there was more violence at HDSP because general population inmates were intermixed with sensitive needs yard inmates and that he had to pay other inmates for protection. P. Decl. at ¶ 18, 22; SAC at 7-8, 11; P. MSJ at 8. However, Plaintiff does not allege that he was threatened or injured by any general population inmates and does not otherwise identify a particularized risk of harm. *See Brown v. Department of Corrections*, No. 317CV05524BHSDWC, 2018 WL 3371545, at *4 (W.D. Wash., June 8, 2018) (noting that "speculative concerns of being assaulted do not rise to the level of substantial risk required by the Eighth Amendment" and finding no genuine issue of material fact where generalized statement that Plaintiff faced a risk of harm was insufficient to show substantial risk of serious harm); *see also Williams v. Wood*, 223 F. App'x 670, 671 (9th Cir. 2007) (affirming dismissal of failure to protect claim where prisoner "did not allege that he ha[d] been assaulted or threatened with an assault[,]" and because "speculative and generalized fears of harm at the hands of other prisoners do not rise to a sufficiently substantial risk of serious harm to his future health" under *Farmer*). Accordingly, Plaintiff fails to satisfy the objective requirement of an Eighth Amendment failure to protect claim. And even if Plaintiff had proffered facts sufficient to create a triable issue of fact on this claim, he has not proffered any facts demonstrating that Defendant was aware of such risks and

23-cv-1920-JAH-DDL

disregarded them by authorizing Plaintiff's transfer to HDSP. Accordingly, the Court **RECOMMENDS** that the District Court **GRANT** Defendant's Motion for Summary Judgment and enter judgment in Defendant's favor and **DENY** Plaintiff's Motion for Summary Judgement as to Plaintiff's Eighth Amendment failure to protect claim.

### 3.    Deliberate Indifference to Serious Medical Need

A prison official's "deliberate indifference to an inmate's serious illness or injury" violates the Eighth Amendment's proscription against cruel and unusual punishment. *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002).  A prisoner must satisfy an objective and subjective requirement to assert an Eighth Amendment violation. *Id.*  The objective requirement is satisfied where the inmate demonstrates that his medical need is sufficiently "serious" such that the "failure to treat [the] condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Id.*  "Examples of conditions that are serious in nature include an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Santos v. Annikos*, No. 3:23-CV-00281-MMD-CSD, 2025 WL 2654834, at *3 (D. Nev., June 9, 2025).

The subjective component requires a culpable mental state, specifically, "deliberate indifference to a substantial risk of serious harm." *Farmer*, 511 U.S. at 836.  "Deliberate indifference exists when a prison official denies, delays or intentionally interferes with medical treatment, or it may be shown by the way in which prison officials provide medical care." *Id.* at *4. The indifference must be substantial, and inadequate treatment due to malpractice, or even gross negligence does not rise to the level of a constitutional violation. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

23-cv-1920-JAH-DDL

"Mere delay of medical treatment, without more, is insufficient to state a claim of deliberate medical indifference." *Robinson v. Catlett*, 725 F. Supp.2d 1203, 1208 (S.D. Cal. July 19, 2012).  Deliberate indifference requires "a purposeful act or failure to act on the part of the defendant." *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1991), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).  "A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established." *Id.*

Plaintiff alleges that he needed neurosurgery that involved his neck and spine and that would allow for greater mobility in his arms without pain.  SAC at 11, Exh. D.  In support, Plaintiff provides Health Care Services Request Forms dated August 29, 2023 and October 8, 2023 that include his request for neck and spine surgery to help with the numbness in his right hand and his pain which he describes as a ten out of ten.  P. MSJ at Exh. 3.  The form also includes requests for assistance with showering and toileting.  *Id.*  Plaintiff also submits a declaration under penalty of perjury declaring that his surgery was delayed because of his transfer.  P. Decl. at ¶ 10.  Plaintiff does not provide any expert reports or medical records opining on his need for surgery or the consequences, if any, of delayed surgery.

### a.    Objective Prong

Plaintiff provides sufficient evidence to demonstrate a triable issue of fact as to whether he had a serious medical condition.  There is no dispute that the surgery was ordered and performed.  Given that back and spine surgery is something "that a reasonable doctor or patient would find important and worthy of comment or treatment" and Plaintiff declared that the condition "significantly affect[ed] [his] daily activities [and resulted in] the existence of chronic and substantial pain[,]" Plaintiff presents evidence that the surgery was sufficiently serious such that the "failure to treat [the] condition could result in further significant injury or the unnecessary and

23-cv-1920-JAH-DDL

wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *see also Santos*, 2025 WL 2654834, at *3.

### b. Subjective Prong

Plaintiff fails to establish a triable issue of fact to satisfy the subjective requirement of deliberate indifference to a serious medical need. The evidence does not show that Defendant interfered with Plaintiff's medical diagnosis and treatment or that the interference caused him harm. Indeed, the evidence does not support a finding that Defendant had any knowledge of Plaintiff's surgery let alone any control over the scheduling of said surgery or potential delay due to transfer. Plaintiff does not connect Defendant's act of overriding Plaintiff's medical designation and facilitating Plaintiff's transfer to a new facility, to a specific harm. Instead, Plaintiff generally alleges that he was transferred to HDSP because of Defendant's actions and that had he not been transferred, his surgery would have taken place as scheduled in March 2023. P. MSJ. Defendant's audit of Plaintiff and decision to remove his High Risk designation is not evidence that Defendant had the required culpable mental state and intentionally interfered with Plaintiff's treatment.

Additionally, the evidence does not show that Plaintiff suffered additional harm or injury from the eight-month delay in surgery. Plaintiff alleges that prior to his transfer, he was scheduled to have surgery and a follow-up appointment with his neurosurgeon. *See* SAC at 8, Exh. D. Plaintiff later states that while his March 2023 surgery was "delayed[,]" it still took place in November 2023. *Id.* at 11. He also generally alleged that he was "deprived of medical treatment and care" and that there was "interference of a medical diagnosis and treatment." *Id.* at 11, 13. Plaintiff does not allege or identify any specific harm that he suffered because of the delay in getting surgery, nor does he identify the medical care and treatment that he was allegedly denied or how it caused him harm. *See* P. MSJ; Dkt. Nos. 87-88; and SAC. Plaintiff does not provide any evidence, other than his own

23-cv-1920-JAH-DDL

conjecture, that he needed surgery before November 2023 or that he suffered harm because of the delayed surgery. *Id.* Plaintiff's opinion regarding the timing of his surgery, without more, is insufficient to create a triable issue of material fact or to show that Defendant was deliberately indifferent to a serious risk of harm. Accordingly, Plaintiff fails to satisfy the subjective requirement of an Eighth Amendment deliberate indifference claim and the Court **RECOMMENDS** that the District Court **GRANT** Defendant's Motion for Summary Judgment and enter judgment in Defendant's favor and **DENY** Plaintiff's Motion for Summary Judgement as to Plaintiff's Eighth Amendment claim of deliberate indifference to serious medical need.

## G.   Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015). "Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.*

The Court employs a two-step analysis to determine whether a government official is entitled to qualified immunity. *Tolan v. Cotton*, 572 U.S. 650, 655 (2014). First, the Court must determine whether the facts, "taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a federal right." *Id.* at 655-56. Second, the Court must determine "whether the right in question was 'clearly established' at the time of the violation." *Id.* at 656. "Courts have discretion to decide the order in which to engage these two prongs." *Id.*

As set forth above, Plaintiff has not established a triable issue of fact regarding his Eighth Amendment claim against Defendant. Accordingly, the Court

need not further analyze whether Defendant is entitled to qualified immunity. *See Rivas v. Koenig*, No. 24-CV-00007-JST, 2026 WL 658410, at *5 (N.D. Cal. Mar. 9, 2026) ("Because there was no violation of Plaintiff's constitutional rights, as explained above, there is no necessity for further inquiries concerning qualified immunity.").

## VI.

## <u>CONCLUSION AND RECOMMENDATION</u>

For all of the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Judge issue an Order: (1) approving and adopting this Report and Recommendation, (2) denying Plaintiff's Motion for Summary Judgment, and (3) granting Defendant's Motion for Summary Judgment.

**IT IS HEREBY ORDERED** that any written objections to this Report must be filed with the Court and served on all parties no later than **May 27, 2026**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **June 10, 2026**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998).

**IT IS SO ORDERED.**

Dated:  May 6, 2026

_David Leshner_

_____
Hon. David D. Leshner
United States Magistrate Judge

23-cv-1920-JAH-DDL

# ATTACHMENT A

23-cv-1920-JAH-DDL

| No. | Plaintiff's Supporting Facts – *See* P. MSJ at 5-9 | SAC, Dkt. No. 87 ("Ramsey Decl."), and/or Dkt. No. 67-1 at 15-21 ("P. Decl.") |
|---|---|---|
| 3[8] | The plaintiff is house[d] at High Desert State Prison (HDSP), in which is not a High Risk (HR) institution facility. | I've been incarcerated since 2006 as a disabled[d] person in a wheelchair (DPW) do [sic] to paraplegic. Ramsey Decl. at ¶ 2.<br><br>This complaint alleges that the civil rights of Plaintiff, Daniel C. Ramsey, who presently resides at P.O. Box 3030 Inf29, Susanville, CA 96127, were violated. SAC at 1.<br><br>I was transferred to an institution that was not a medical facility – High Desert State Prison (HDSP). P. Decl. at ¶ 2. |
| 4 | The plaintiff is (HR) medical clinical status and requires a (HR) medical designation. | I was classified by medical classification committee (MCC) AS A (DPW) with Chronic Pain Management, Fall Risk – High Risk Medical with need of High Risk Medical Treatment Facility. Ramsey Decl. at ¶ 7. |

---

[8] Nos. 3-22 are quotes from P. MSJ at 5-9. *See also* Dkt. No. 76-3 at 18-22.

23-cv-1920-JAH-DDL

|  |  |  | Plaintiff was (HR), Chronic Care, (DPW) during the relevant time. SAC at 7-9, 13. |
|---|---|---|---|
|  |  |  | I've been permanently High Risk (HR) Chronic Care Clinical Status and Disabled Person in a Wheelchair at all times. (DPW). P. Decl. at ¶ 4. |
| 5 | The plaintiff was transferred to (HDSP) because of the defendant (N. Thompson) endorsement. |  | Because of the Defendant's action and none [sic] actions. I was transferer [sic] to a facility (HDSP) that's not only not High Risk Facility but also wouldn't provided [sic] for my medical needs. Ramsey Decl. at ¶ 21.

On March 21, 2023, the plaintiff was transferred to (HDSP) because of the Defendant's approval, action and nonaction to prevent plaintiff's transfer. SAC at 8. |
| 6 | The defendant is not authorized to transfer plaintiff to a facility that's not meeting the level of care that's been clinically approved. |  |  |
| 7 | The plaintiff was housed at Richard J. Donovan Medical facility and was there before his transfer from 2014 to March of 2023 because, of his previous prison could not provide for His care and need- (HDSP) an addition to the prison not being (HR) Facility. |  | During the relevant time in question, Plaintiff was housed at Richard J. Donovan Medical Facility Institution. SAC at 4.

I was at a medical facility before I was transferred called Richard J. Donovan – Medical Facility (RJD). P. Decl. at ¶ 1. |
| 8 | The counselor (J. Fontaine) evaluated the Locations that were in compliance with policy and plaintiff's medical clinical |  | Plaintiff was called by his counselor [J. Fontaine] at (RJD) for a Pre-Evaluation Unit Classification Review . . . . |

23-cv-1920-JAH-DDL

| | | |
|---|---|---|
| | status. And located two prison's that was medical Facilities available. The two institutional medical Facilities were California Health Care facility (CHCF) and California Medical Facility (CMF). The plaintiff chosed the (CHCF) as first choice and (CMF) as second. The counselor agreed and forward the findings to Unit Classification Committee (UCC). | Plaintiff could be housed at two facilities – [] CHCF level 2 or [] CMF. Plaintiff picked (CHCF) as first choice and (CMF) as second choice. The counselor agreed to the selections and forwarded it to the Classification Committee team (ICC) & (UCC). SAC at 4-5.

My counselor J. Fountaine verified that both (CMF) & (CHCF) both had a bedspace opening for me. Ramsey Decl. at ¶ 30.

I was given a option by my counselor J. Fountaine (CCI) during a interview (1-12-2023) prior to the classification committee to be transferred to (CHCF) OR (CMF) institutions medical facility. I chosed (CMF) first choice and (CMF) as second choice because (CHCF) was better then (CMF) and (CHCF) was close to someone I know. P. Decl. at ¶ 6. |
| 9 | With the agreement between plaintiff And the counselor, the plaintiff signed Documents of the facilities (CHCF) and (CMF) he was to be transferred to. The plaintiff signed the Document because he did not protest the Findings or for The Counselor to Represent Him At (UCC) and Institution Classification Committee (ICC). The (ICC) and (UCC) both agree with the finding of selected institution medical Facilities and Approved Transfer by Recommendation. | |

26

23-cv-1920-JAH-DDL

| 10 | On March 3, 2023, The Defendant Audit And Endorsed the plaintiff to (HDSP) over-riding [override] the Recommendation And the Reason's To Transfer plaintiff to a Medical Facility. | On 3-3-2023, The Defendant N. Thompson. A Classification Staff Representative (CSR), Audit, endorsed Plaintiff to be transferred to (HDSP). SAC at 7, Exh. C. |
|---|---|---|
| 11 | The Defendant place on Her "Auditor Action" Document with Statement Typed: A.) Medical Conditions-Removed/Disapproved B.) HR (High Risk) w/ override. C.) Reason's None | On 3-3-2023, The Defendant N. Thompson filed a "Auditor action" Document with the statement typed: 1) Medical Conditions – removed/disapproved 2) HR (High Risks) w/ override. 3) Reason None. SAC at 6, Exh. C. |
| 12 | The Defendant "override," Removed And "Disapproved" plaintiff medical condition's. Also Clinical Status in Documents to Justify the placement of a Facility Placement thats not High Risk Medical. The Administrative determinant is used to indicate placement conditions. It's Also Used to As A placement score. | |
| 13 | The (UCC) and (ICC) Document filed and given to the defendant, showed plaintiff's housing score, needs, by the Abbreviation "MED." | |
| 14 | Moreso, The Defendant Even placed on Her Audit or Endorsement Form – Clinical Category Issues – N/A. Even so, the plaintiff Had Clinical Issues. | She also put "clinical category issues N/A" SAC at 6, Exh. B. |
| 15 | In Order For plaintiff or Any inmate prisoner to become (HR) And be placed in A medical Facility, His Attributes must match His need or clinical status. There is A "Medical Classification System" That provides Matching And Answering question where A inmate can go to be House. | |
| 16 | The Defendant is Apart of Custody Staff and Shall not make any medical changes to documents or decision | |

27

23-cv-1920-JAH-DDL

| | | | |
|---|---|---|---|
| | | without Medically Authorized Approval from Medical physicians. | |
| | 17 | Since plaintiff's Arrival At (HDSP) He Has been Denied Transfer out of the prison because of (CSR) Defendant Transfer Approval to be At the prison. | Classification Committee and ADA employees at (HDSP) refused to do any transfer because of the defendant endorsement (As in approval) that I was at the right institution. P. Decl. at ¶ 20. |
| | 18 | Being The plaintiff could not transfer because of the Defendant Altering And Falsifying Document on Her Auditor Action Form. The plaintiff was subjected to Harsh Weather (snow) in the Winter, paying inmates for protection, Delayed Surgeries for months, not the correct medical assistance needed with Daily Activities (ADLS), unleveled Terrain because (HDSP) Has Hill's thats Hard for Wheelchair Inmates. The Plaintiff not only feared for His Life but Also His Safety with his Health. Any other fall on His neck out His Wheelchair could Result in total Disability. All These issues was a Result of the Defendants Actions. | Plaintiff [has] been subjected to A.) Being in a dangerous environment then the normal aspect of prison. Not being able to defend for himself with the use of one arm in a hostile environment. B.) Flooded cell for months since his transfer (March 21, 2023) Till Nov of 2023 (incomplete roof). C.) Delayed surgery which the plaintiff would have received a lot earlier than to wait from March 3, 2023 till Nov of 2023. (HDSP) did not have available surgeons during the relevant time. D.) Mental and emotional duress, sleepless nights, stress. E.) Deprived of medical treatment and care. F.) Interference of a medical diagnosis and treatment. SAC at 11. <br><br> I've been subjected to a flooding cell for months, snow covered grounds, uneven terrain (Hills), no support with (ADL's) activity of daily living, shower assistance I need as a person with one good arm and because general populated inmates was mix with SNY – Sensitive Needs Yard |

23-cv-1920-JAH-DDL

| | | |
|---|---|---|
| | | inmate's there was a lot of violences then normal. P. Decl. at ¶ 22. |
| 19 | Because of Plaintiff fall in 2012 The plaintiff Has been label by medical custody staff as a Fall Risk. | I was classified by Medical Classification Committee (MCC) as a (DPW) with Chronic Pain Management, Fall Risk. Ramsey Decl. at ¶ 7.<br><br>I've been a high fall risk since 2012 because I fell on my neck and injured my spine. P. Decl. at ¶ 23. |
| 20 | The plaintiff even need assistance to use the Bathroom. He Relied on inmates to Help He paid with Food from the Kitchen or package, canteen when He went to store. | I needed more than an inmate to assist to push me in a wheelchair. I need assistance with shower, bathing, and placing on clothes. (ADL) Assistance which only medical facilities or CTC provides. Ramsey Decl. at ¶ 32.<br><br>I need help to use the bathroom and did not receive it from custody nurse's/ I was told by Doctor Lee on 10/30/23 that I should be able to transfer after surgery because the prison infirmary (CTC) was close for repair. I had help from inmates I padi with packages, food from state (HDSP) or canteen (store) for my whole stay till surgery. P. Decl. at ¶ 24. |
| 21 | The plaintiff wrote a Grievance (602) to Stop His transfer In March of 2023. About Thompson illegal Activities but was Denied And Not Interview to present his evidence of proof. | Plaintiff found out he was going the same day and wrote a grievance[] (602). Plaintiff was denied. SAC at 7, Exh. D (Appeal of Grievance, Office of Appeal Decision). |

23-cv-1920-JAH-DDL

| | | | I wrote a grievance and was not given the opportunity to present facts in defense or a hearing.  P. Del. at ¶ 25. |
|---|---|---|---|
| 22 | The Plaintiff Also Did not Have a Hearing, interview, or any kind of notice that He was being Transfered, or that His medical condition's would be overridden and Remove before the Defendant Actions on 3-3-2023. | | Plaintiff was not notified he was being transfer[red] to (HDSP) til the day of (3-3-23). On his own. He also did not know that the Defendant alter[ed] the medical condition and (HR) clinical status of plaintiff['s] records. SAC at 14.<br><br>Before Defendant changed my medical conditions to disapproved and removed I never received any notice.  As well as any notice my clinical status was changed.  Ramsey Decl. at ¶ 36.<br><br>I was never notified by the Defendant I was being transferred to (HDSP) or that my medical conditions would be removed and disapproved during or before her endorsement.  P. Decl. at ¶ 26. |

23-cv-1920-JAH-DDL